## In re JAFFE.

Circuit Court of Appeals, Second Circuit.
June 6, 1927.

No. 322.

1. **Bankruptcy** ⊛⇒384—False financial statement held insufficient to warrant disapproval of composition agreement, in absence of showing objecting creditors' reliance thereon (Bankruptcy Act, § 14b [Comp. St. § 9598]).

That bankrupt's financial statement set forth a greater inventory and a less liability than in fact existed *held* insufficient to warrant disapproval of composition agreement, under Bankruptcy Act, § 14b (Comp. St. § 9598), where objecting creditors did not establish reliance thereon.

2. **Bankruptcy** ⊛⇒384—Loss of bankrupt's general ledger, some inventory sheets, and trial balances held not to warrant disapproval of composition agreement.

Where bankrupt presented all books of original entry and did all in his power to bring in witnesses who had worked on books, *held*, loss of general ledger, not a book of original entry, but one capable of being reconstructed, if necessary, and loss of some inventory and trial balance sheets, was insufficient to warrant disapproval of composition agreement.

3. **Bankruptcy** ⊛⇒384—Disapproval of composition agreement on ground of concealment of assets held unwarranted.

Disapproval of composition agreement on ground of concealment of assets *held* unwarranted, in absence of specific showing of payment of money or delivery of merchandise in an irregular or fraudulent manner, or any showing of extraordinary purchases, suspicious sales, or removal or disposition of money or property at any time before bankruptcy.

4. **Bankruptcy** ⊛⇒376—Composition offering 20 per cent. in cash, opposed by less than 2 per cent. of creditors in number and 10 per cent. in amount, held not unfair.

Composition whereby creditors were offered 20 per cent. in cash, which was objected to by less than 2 per cent. of the creditors in number and less than 10 per cent. in amount, *held* not adverse to best interests of creditors.

L. Hand, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy of Isidor Jaffe. From an order confirming a composition offered by the bankrupt, and overruling specifications of objections thereto (14 F.[2d] 558), the Endicott Johnson Corporation, objecting creditor, appeals. Affirmed.

The bankrupt at the time of the filing of the petition in bankruptcy was about 30 years of age and engaged in the business of operating what are popularly called Army and Navy Stores, having two such stores in the

city of New York. He had been engaged in the same line of business for about 6 years. His start was made at Bridgeport, Conn., with a man named Dukarsky, with whom he remained in partnership for about 2 years, and on the dissolution of this partnership the bankrupt purchased the two stores formerly belonging to the partnership; one located at Hartford, Conn., the other at New Haven, Conn.

Shortly after this the bankrupt opened two other stores in Hartford, Conn., one of them being opened in partnership with a man by the name of Storch, whom the bankrupt eventually bought out. The bankrupt opened various stores, eleven in all, at various places, and sold or removed them, so that on July 1, 1925, he had three stores—two in New York City, and one at Bridgeport, Conn.

During the month of July, 1925, the Bridgeport store was sold by the bankrupt to one Schneider, and at the time of filing the petition the bankrupt had but two stores, both of which were located in New York City. About March 19, 1925, the bankrupt issued a written financial statement to his creditors.

The bankrupt kept a complete set of books, which were turned over to the receiver, with the exception of the general ledger, which was lost. The bankrupt scheduled 118 general creditors, with claims aggregating $64,239.11. He offered a composition of 20 per cent. in cash to general creditors, and only two creditors filed objections, the appellant, Endicott Johnson Corporation, and the First National Bank of Bridgeport, with claims amounting in the aggregate to $6,023.31.

The specifications of objection (11 in number) were referred to a referee in bankruptcy as special master, who sustained 6 and overruled 5. The motion to confirm the report of the special master was denied by the court, which entered an order confirming the composition.

Endicott Johnson Corporation alone appealed from the order of composition, and no stay of proceedings upon the order appealed from was obtained.

Remington & Meek, of New York City (Harold Remington, of New York City, of counsel), for appellant.

H. & J. J. Lesser, of New York City (Jacob J. Lesser, of New York City, of counsel), for bankrupt appellee.

Before MANTON and L. HAND, Circuit Judges, and CAMPBELL, District Judge.

CAMPBELL, District Judge (after stating the facts as above). The objections of the appellant to the confirmation of the composition may be grouped under four heads: (1) False financial statement; (2) concealment, removal, or destruction of books of account and records; (3) concealment of assets by virtue of failing to make reasonable explanation of gross discrepancy recently occurring; and (4) not for the best interest of creditors.

[1] Appellant has shown that the bankrupt's written financial statement of March 1, 1925, sets forth a greater inventory and less liabilities than in fact existed in a substantial amount; but that alone is not sufficient to warrant refusal of the composition.

Under section 14b of the Bankruptcy Act. (Comp. St. § 9598), it is essential to show that the bankrupt obtained credit from a person upon a materially false statement in writing, made to such person for the purpose of obtaining such property or credit; and the weakness of the appellant's case lies in the fact that it does not appear that the objecting creditors relied upon these statements in issuing and granting credit to the bankrupt.

The statement was mailed to the appellant on June 1, 1925, at which time the bankrupt was indebted to it in the sum of $6,032.84, and between that time and the bankruptcy the credit extended to him was but $364.60, while his payments on account of the indebtedness amounted to $2,785.51, thus reducing the liability of the bankrupt to the appellant to $3,611.93. Considering the dealings between the appellant and the bankrupt, it does not seem to us that reliance on the statement in granting credit in the sum of $364.60 has been shown.

The statement was received by the First National Bank of Bridgeport some time after March 1st, and on April 17th the bank loaned the bankrupt $1,000. The testimony shows that the bankrupt had been a depositor in the bank for about 8 years, and that it had extended credit to him on his own paper to the extent of $5,000.

There was but little difference in the amount of the bankrupt's indebtedness to the bank at the time of the receipt of the statement and at the time of the bankruptcy. That the bank did not rely on the statement, notwithstanding the claim made by the cashier to the effect that his opinion of the bankrupt was not as good when he applied for the loan on April 17, 1925, as it was a year before, is shown by the letter recommending the bankrupt, written by the cashier to a New York bank on July 29, 1925.

[2] The bankrupt presented all his books of original entry, and did all in his power to as-

sist by bringing as witnesses those who had worked on the books. The general ledger was not a book of original entry, but a book in which were posted summaries from the books of original entry, which he had produced, and we see no reason why, if required, the general ledger could not have been reconstructed.

In any event, the absence of the book does not seem to have greatly interfered with ascertaining the financial condition of the bankrupt, and we do not believe that the evidence is sufficient to sustain a finding of concealment, removal, or destruction of books of account or records, because the general ledger, some inventory sheets, and some trial balances have not been found. In the face of our finding as to the financial statement, the evidence does not sustain a finding of concealment of assets.

[3] Nothing specific as to the payment of money or delivery of merchandise in an irregular or fraudulent manner, constituting a fraudulent concealment or transfer, was shown. There was no evidence of any extraordinary purchases, suspicious sales, or removal of property, or disposition of money or property at any time before the bankruptcy; on the contrary, the business appears to have been carried on in the regular course, and the assets to have been substantial.

[4] The composition seems to be fair and, while not controlling, still of great weight on the question of whether the composition is for the best interest of the creditors, is the fact that less than 2 per cent. of the creditors in number, and less than 10 per cent. in amount, have objected to it. The evidence does not warrant a finding that a greater amount would have been paid to creditors by administering the estate, nor that the composition was not for the best interest of the creditors.

The order appealed from is affirmed.

L. HAND, Circuit Judge (dissenting). The specification for issuing a false financial statement on March 1st appears to me amply proved in two particulars; the amount of the inventory, and of the bills payable. The January inventory as contained in the books was about $44,000, and was shown by bookkeeping which was not challenged to have remained for 30 days about the same.

The inventory put into the issued statement was $62,000. Here was a discrepancy of over $17,000, that nobody attempts to explain, except by the word of a not impressive witness, that the January inventory was "incorrect." In what respects it was incorrect, we are not told; no details are given; no verification offered; no substitute figures suggested. The stark assertion is all we have; itself a most improbable one. But this is not all. That very inventory was used on March 15th, or shortly before, in an income tax return, after its putative incorrectness had admittedly been discovered. Even in June, when the bookkeeper who made it up came back to the shop, she did not try to change it. How there can be any fair doubt, in the face of such proof, that this item was deliberately false, I cannot conceive.

As to the item of bills payable I need say no more than that there is no escape from the conclusion that at least $8,000 of the Uknity goods must have been sold before February 1st. If not, why give $8,000 of acceptances? The fact that the acceptances may not have been due, or not finally passed by the seller, is quite immaterial. When the goods were sold, debts arose which ought to have been included. The explanations or attempts at explanation seem to me trivial. Thus there is a discrepancy of over $25,000 in the statement. That, coupled with the bankrupt's shifty testimony, of a kind familiar enough, satisfies me that we have here to do with the usual case of a dishonest trader, who ought not to get his discharge, no matter however many of his creditors are willing to take their pittance.

Nor can I see that it makes any difference that the bankrupt paid off more on his accounts with the objecting creditors after they got the statement than the value of what he received during that period. It has been held again and again that a creditor may rely on other things, so long as he in fact relies on the statement. There seems to me no reason to doubt that in this case it was one of the factors on which they did rely. I should so hold, even if it were proved that they would have lent or sold without the statement. It is enough if they believed it, and if it in any part actuated their conduct.

I dissent.